**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CIVIL ACTION NO. 2:26-cv-2429**

---

**UNITE 4 FREEDOM, INC.**;
**GREGORY STENSTROM, PRO SE**;
**ROBERT C. MANCINI, PRO SE**;

*Plaintiffs,*

v.

**AL SCHMIDT**, **in his official capacity as**
**Secretary of the Commonwealth of Pennsylvania**;
**PENNSYLVANIA DEPARTMENT OF STATE;**

*Defendants.*

---

# COMPLAINT FOR DECLARATORY RELIEF

---

## I. INTRODUCTION

1. This action concerns statutory compliance with federal election law. It does not allege fraud and does not challenge any past election outcome.
2. Plaintiffs seek a declaration of the governing legal requirements for certification of federal elections under controlling federal statutes.
3. The issue presented is whether Defendants may lawfully certify federal election results where required election records, system inputs, and system outputs cannot be reconciled through preserved and auditable records.

4. Federal law requires preservation of election records sufficient to reconstruct federal elections and verify their integrity.[1]

5. Federal law further requires public inspection of voter registration records and the use of auditable voting systems capable of verification.[2]

6. The Court must determine whether certification is lawful where reconciliation cannot be performed from preserved records.

7. Where reconciliation cannot be performed, the statutory requirement is not satisfied.

8. Failure to apply controlling statutory requirements constitutes reversible error.[3]

9. This controversy is capable of repetition yet evading review. Defendants have certified prior federal elections without reconciliation of inputs, records, and outputs and continue to apply the same certification practices as a matter of official policy and practice. Because certification occurs on a compressed timeline and is completed before judicial review can be obtained, the same statutory violations are likely to recur in future elections, including the 2026 primary and general elections.[4]

---

[1] **52 U.S.C. § 20701** (requiring preservation of election records sufficient to reconstruct federal elections and verify their integrity).

[2] **52 U.S.C. § 20507(i)(1)** (requiring public inspection of voter registration records); 52 U.S.C. § 21081(a)(1)(A), (a)(2) (requiring auditable voting systems capable of verification); *see also* ***FEC v. Akins***, 524 U.S. 11, 21 (1998) (holding that the denial of information subject to a statutory disclosure requirement constitutes a concrete and particularized injury sufficient to satisfy Article III standing).

[3] ***Koon v. United States***, 518 U.S. 81, 100 (1996) (failure to apply controlling law constitutes reversible error).

[4] ***S. Pac. Terminal Co. v. ICC***, 219 U.S. 498, 515 (1911); FEC v. Wis. Right to Life, Inc., 551 U.S. 449, 462 (2007) (capable of repetition yet evading review doctrine).

## II. JURISDICTION AND VENUE

10. This Court has jurisdiction under 28 U.S.C. § 1331.

11. This action is further brought pursuant to 42 U.S.C. § 1983 to redress deprivation of rights secured by federal law.

12. Declaratory relief is authorized under 28 U.S.C. §§ 2201–2202.

13. Venue is proper under 28 U.S.C. § 1391(b).

14. This action seeks prospective declaratory relief against a state official to determine ongoing compliance with federal law and is not barred by sovereign immunity.

15. This action does not depend on whether any error, fraud, or misconduct has occurred or will occur. It presents a present and purely legal question of whether Defendants can satisfy mandatory federal verification requirements from preserved records.

## III. PARTIES

16. Plaintiff Unite 4 Freedom, Inc. ("U4F") is a nonprofit organization engaged in election data analysis, statutory compliance verification, and public reporting of election system integrity. U4F relies on access to preserved election records, certification artifacts, and publicly required datasets in order to perform its core function of verifying compliance with federal election law. Defendants' policies, directives, and practices have denied U4F access to such records in a form permitting inspection, extraction, and verification,

thereby impairing its organizational mission and depriving it of statutorily required information.[5]

17. Plaintiff Gregory Stenstrom is a registered voter, election observer, and authorized participant in election-related observation and inspection activities under Pennsylvania law, including functions recognized by the Pennsylvania Election Code.[6] Plaintiff Stenstrom has participated in election observation and record inspection and is entitled to statutory rights of access to election records and processes necessary to verify compliance with federal and state law.[7] Plaintiff Stenstrom has sought access to election records, certification materials, and related documentation required to be preserved under federal law and has been denied access to such records in a form permitting verification, reconstruction, or meaningful inspection.[8]

18. Plaintiff Robert C. Mancini is a registered voter and authorized participant in election-related observation and record inspection activities under Pennsylvania law.[9] Plaintiff Mancini submitted formal requests for election records, including absentee ballot records, cast vote records, and ballot-related information. As reflected in sworn declarations, such requests were denied or limited to in-person inspection without the ability to copy, photograph, or extract information necessary for verification.[10] These restrictions

---

[5] ***Havens Realty Corp. v. Coleman***, 455 U.S. 363, 379 (1982) (holding that an organization suffers injury in fact when defendant's actions perceptibly impair its ability to carry out its mission).
[6] **25 P.S. § 2687(a)** (providing for appointment and presence of watchers at polling places as authorized participants in the election process).
[7] **25 P.S. §§ 3146.8(g)(1.1), 3150.12(g)(1.1)** (permitting authorized representatives and watchers to be present during pre-canvassing and canvassing of mail-in and absentee ballots).
[8] **52 U.S.C. § 20701** (requiring retention of all records and papers relating to federal elections sufficient to permit reconstruction and verification).
[9] **25 P.S. § 2687(a)** (recognizing authorized watchers and representatives as participants in election observation activities).
[10] ***Hawthorne Decl.*** ¶¶ 8–9 (Dec. 17, 2025); ***Allen Aff.*** ¶¶ 7–9.

rendered inspection ineffective and deprived Plaintiff Mancini of the ability to perform statutorily contemplated observation and verification functions.[11]

19. Defendant Al Schmidt is sued in his official capacity as Secretary of the Commonwealth of Pennsylvania and is responsible for certification of federal elections and for issuing directives, guidance, and instructions governing election administration throughout the Commonwealth.[12] Defendant Schmidt, through official policies and directives, establishes the standards applied by county election officials with respect to record access, system verification, and certification practices.[13] These directives are relied upon by counties in limiting public access to election records and in defining the methods by which voting system integrity is evaluated, including the position that system initialization or operational readiness procedures are sufficient for validation of voting system software, in lieu of independent verification against preserved records capable of reconstruction and audit.[14] County election officials act pursuant to and in reliance upon directives and certification standards established by Defendant Schmidt, and the relief sought requires uniform statewide compliance.

20. Defendant Pennsylvania Department of State administers elections, oversees certification of voting systems, and maintains election-related records.[15] The Department has asserted that certain election records are not maintained at the state level and instead reside with

---

[11] ***FEC v. Akins***, 524 U.S. 11, 21 (1998) (holding that denial of statutorily required information constitutes a concrete and particularized injury).

[12] **25 P.S. § 2621(a)** (establishing Secretary of the Commonwealth's authority over election administration and certification duties).

[13] **Id. § 2621(d)** (authorizing the Secretary to issue directives and guidance governing election procedures and administration).

[14] **52 U.S.C. § 21081(a)(1)(A), (a)(2)** (requiring voting systems to produce permanent paper records and permit independent verification and auditability).

[15] **25 P.S. § 2621(a)** (assigning the Department of State responsibility for election oversight and administration).

county entities, while counties simultaneously restrict meaningful access to such records, resulting in a circular and ineffective access structure that prevents verification.[16]

---

## IV. STATUTORY FRAMEWORK

21. Federal law requires:

a) preservation of election records sufficient to reconstruct federal elections;

b) maintenance and public inspection of voter registration records;

c) voting systems that produce auditable records and permit verification;

d) election administration capable of validation against preserved records.

22. These statutory requirements operate as a unified structure:

**Inputs → Records → Processing → Outputs → Verification**

23. Where verification cannot be performed through preserved records, compliance is not established.

---

## V. FACTUAL ALLEGATIONS

### A. Quantified Record Discrepancies

24. Plaintiffs' analysis of official election data reflects material discrepancies between election inputs, preserved records, and certified outputs.

25. These discrepancies are quantified and derived from official datasets.

26. The record reflects the following post-certification changes in voter participation data:

[16] ***Hawthorne Decl.*** ¶¶ 8–9 (Dec. 17, 2025).

a) approximately 2,039,593 changes in the 2024 General Election dataset;

b) approximately 259,219 changes in the 2022 General Election dataset;

c) approximately 385,122 changes in the 2020 General Election dataset.

27. These changes include:

a) voters recorded as having voted later recorded as not voting;

b) voters recorded as not voting later recorded as voting;

c) additions and deletions of voter participation records;

d) alterations to voter history data after certification.

28. These figures are derived from official voter record comparisons.

29. These discrepancies require reconciliation under federal law.

30. Because federal law requires preservation of records sufficient to reconstruct federal elections, unreconciled discrepancies reflect the absence of records necessary to satisfy that statutory requirement.[17]

---

**B. Unreconciled Election Outputs**

31. The record reflects inconsistencies between official reports, including:

a) differing voter participation totals;

b) inconsistencies between voter history records and tabulated results;

c) discrepancies between county and statewide totals.

32. The record further reflects:

a) 98,095 unreconciled blank ballots;

[17] **52 U.S.C. § 20701** (requiring preservation of election records sufficient to reconstruct federal elections and verify their integrity).

b) 82,356 unreconciled blank ballots.

33. The record further reflects:

a) 5,625 voters recorded as having voted who reported they did not vote.

---

## C. Registration and Voting Irregularities

34. The record reflects:

a) 79,349 apparent registration violations;

b) 62,075 voting irregularities in 2020;

c) 27,623 voting irregularities in 2022.

35. These include duplicate registrations, inactive inconsistencies, invalid addresses, and records associated with deceased individuals.

---

## D. Failure of Reconciliation

36. Federal law requires records sufficient to reconstruct elections.[18]

37. Defendants have not produced records sufficient to reconcile inputs, records, and outputs.

38. The record reflects that reconciliation has not been performed.

---

## E. Informational Injury

39. Plaintiffs have requested records sufficient to verify compliance.

40. Defendants have not produced such records in a form permitting verification.

[18] **52 U.S.C. § 20701** (requiring preservation of election records sufficient to reconstruct federal elections and verify their integrity).

41. The denial of access to statutorily required information constitutes a concrete informational injury.[7]

---

## F. Certification Without Verification

42. Defendants continue to certify election results despite unreconciled discrepancies and absence of required records.

43. If federal law requires verification, and verification cannot be performed, certification is unlawful as a matter of law.

44. Plaintiffs do not bear the burden of establishing that verification is impossible. Rather, where federal law requires verification as a condition of certification, Defendants must demonstrate that such verification can be performed from preserved records. The absence of such demonstration, together with the denial of access to the records necessary to perform verification, establishes a present failure of statutory compliance.

---

## VI. STANDING

45. Plaintiffs satisfy Article III standing requirements.[19]

46. Plaintiffs have suffered concrete and particularized injuries arising from denial of access to election records required to be preserved and made available under federal law.

[19] ***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 560–61 (1992) (holding that Article III standing requires injury in fact, traceability to the challenged conduct, and redressability by the requested relief, and that well-pleaded allegations must be accepted as true at the pleading stage).

47. Plaintiffs, including Plaintiffs Stenstrom and Mancini, are authorized participants in election observation and record inspection activities under Pennsylvania law and have exercised those rights through requests for election records, including ballot-related records, cast vote records, and certification-related materials.[20]

48. Plaintiffs requested access to such records for purposes of inspection, verification, and reconstruction of election processes. Defendants denied access to such records in a form permitting meaningful inspection, copying, or extraction, and in certain instances limited access to in-person viewing without the ability to preserve or analyze the contents of such records.[21]

49. These limitations rendered inspection functionally ineffective and deprived Plaintiffs of the ability to perform statutorily contemplated observation and verification functions.

50. Defendants further asserted that requested records were not maintained at the state level and were instead held by county entities, while county officials simultaneously restricted meaningful access to such records, resulting in a circular access structure in which records required to be preserved cannot be obtained in a usable form.[22]

---

[20] **25 P.S. §§ 2687(a), 3146.8(g)(1.1), 3150.12(g)(1.1)** (providing for authorized watchers and representatives to observe election processes, including pre-canvassing and canvassing of ballots).
[21] ***Allen Aff.*** ¶¶ 7–9; ***Hawthorne Decl.*** ¶¶ 8–9 (Dec. 17, 2025).
[22] ***Hawthorne Decl.*** ¶¶ 8–9 (Dec. 17, 2025).

51. As a result of Defendants' conduct, Plaintiffs are unable to verify whether Defendants have satisfied mandatory federal statutory requirements governing election record preservation, auditability, and verification.

52. The denial of access to statutorily required information constitutes a concrete informational injury.[23]

53. These injuries are not generalized grievances but arise from Plaintiffs' direct efforts to obtain access to specific categories of election records and from Defendants' denial of such access.

54. These injuries are ongoing and capable of repetition yet evading review, as Defendants continue to apply the same policies and certification practices on compressed timelines that preclude pre-certification judicial review.[24]

55. The injuries are fairly traceable to Defendants' conduct, including policies, directives, and practices governing record access and system verification, and are redressable by declaratory relief establishing the governing statutory requirements for preservation, reconciliation, and verification of election records.[25]

56. Plaintiffs' claims do not require exhaustion of any state administrative process. This action arises under federal law and seeks judicial determination

---

[23] ***FEC v. Akins***, 524 U.S. 11, 21 (1998) (holding that denial of information subject to a statutory disclosure requirement constitutes a concrete and particularized injury sufficient to confer standing).
[24] ***S. Pac. Terminal Co. v. ICC***, 219 U.S. 498, 515 (1911) (recognizing exception where challenged conduct is capable of repetition yet evading review); ***FEC v. Wis. Right to Life, Inc***., 551 U.S. 449, 462 (2007) (applying doctrine to time-limited governmental actions likely to recur).
[25] ***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 560–61 (1992) (holding that Article III standing requires injury in fact, traceability to the challenged conduct, and redressability by the requested relief, and that well-pleaded allegations must be accepted as true at the pleading stage).

of statutory compliance, not administrative enforcement. Exhaustion is not required where Congress has not expressly mandated it, where claims are brought under federal civil rights law, or where the issues presented are purely legal and administrative remedies are inadequate.[26]

57. Plaintiffs plausibly allege denial of access to statutorily required information and resulting inability to verify compliance with mandatory federal law. At the pleading stage, these allegations must be accepted as true and are sufficient to state a claim for relief.[27]

58. Failure to apply the governing standing standard and accept Plaintiffs' allegations as true constitutes reversible error.[28]

59. This action does not seek review of any prior election outcome or relitigation of previously adjudicated claims. It presents a prospective question of statutory compliance based on current and ongoing certification practices.

---

## VII. CLAIM FOR DECLARATORY RELIEF

60. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein and incorporate Exhibits A, B, and C as factual support for the quantified

[26] ***Patsy v. Bd. of Regents***, 457 U.S. 496, 516 (1982) (holding that exhaustion of state administrative remedies is not required for § 1983 claims); ***Darby v. Cisneros***, 509 U.S. 137, 146–47 (1993) (holding exhaustion is required only where expressly mandated by statute); ***McCarthy v. Madigan***, 503 U.S. 140, 147–48 (1992) (holding exhaustion is not required where issues are purely legal or remedies are inadequate).

[27] ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009) (holding that a complaint must contain sufficient factual matter to state a plausible claim and that courts must accept well-pleaded facts as true at the pleading stage).

[28] ***Koon v. United States***, 518 U.S. 81, 100 (1996) (holding that failure to apply controlling law constitutes reversible error).

discrepancies, denial of access to election records, and unreconciled conditions alleged in this Complaint. Plaintiffs' Memorandum of Law is filed contemporaneously as legal amplification of the statutory framework presented; however, this Complaint independently states a claim for relief as a matter of law.

61. An actual controversy exists regarding whether federal law requires reconciliation prior to certification.

62. Plaintiffs contend that federal law requires verification through preserved records.

63. Defendants' conduct reflects certification without reconciliation.

64. This action presents a pure question of statutory compliance. Where a complaint alleges the existence of mandatory federal requirements and pleads facts demonstrating the absence of the conditions necessary to satisfy those requirements, dismissal at the pleading stage would require the Court to either disregard well-pleaded facts or decline to apply controlling law. Neither is permissible under governing Rule 12 standards.

65. Because the question presented is purely legal and does not depend on resolution of disputed facts, it is particularly suited for judicial determination at this stage.

66. A judicial declaration is necessary.

---

## VIII. REQUEST FOR DECLARATORY RELIEF

Plaintiffs respectfully request that this Court:

1. Declare that federal law requires preservation sufficient to reconstruct elections;
2. Declare that reconciliation is required prior to certification;
3. Declare that certification without reconciliation violates federal law;
4. Grant such further relief as appropriate.

---

**Respectfully submitted,**

**Renee Mazer**
PA Bar No. 57666
191 Presidential Blvd., Apt. 419
Bala Cynwyd, PA 19004
(484) 716-9619
reneemazer@gmail.com
Counsel for Plaintiff
Unite 4 Freedom, Inc.
Date: April 13, 2026

---

**Gregory Stenstrom, Pro Se**
1541 Farmers Lane
Glen Mills, PA 19342
gstenstrom@xmail.net
856-264-5495
Date: April 13, 2026

---

Robert Mancini

**Robert C. Mancini, Pro Se**
4 Guernsey Lane
Media, PA, 19063
robcmancini@gmail.com
610-506-9827
Date: April 13, 2026

---